779 So.2d 691 (2001)
John M. LANDIS
v.
Doug MOREAU, Individually, and in His Capacity as District Attorney for the 19th Judicial District, Parish of East Baton Rouge.
No. 2000-C-1157.
Supreme Court of Louisiana.
February 21, 2001.
*692 John M. Landis, Ramiah Shanti Bright Brien, Stone, Pigman, Walther, Wittmann *693 & Hutchinson, New Orleans, Counsel for Applicant.
Douglas P. Moreau, District Attorney, Richard C. Nevils, Baton Rouge, Counsel for Respondent.
Denise LeBouef, Counsel for Louisiana Assn. Criminal Defense, Amicus Curiae.
JOHNSON, Justice.
We granted writ of certiorari to determine whether witness statements, recorded prior to trial, otherwise accessible under the Public Records Act, are immune from inspection under the attorney work product doctrine after final adjudication of the criminal proceedings. We hold: 1) the Public Records Act does not specifically exempt the audiotapes at issue; 2) audiotapes are "tangible things" and are not exempt from discovery pursuant to La. Code Civ. P. art. 1424; 3) mental impressions, conclusions, opinions, and theories of an investigator are not protected under the attorney work product rule. Accordingly, we reverse the lower courts' rulings that the audiotapes are not discoverable in toto. We order that the audiotapes be transcribed by an official court reporter while remaining under seal, and we remand this matter to the trial court for an in camera inspection of the transcriptions of the tapes to determine whether any portions of the tape recorded statements are discoverable in that they do not contain an attorney's or expert's mental impressions, conclusions, opinions, or theories.

FACTS AND PROCEDURAL HISTORY
Plaintiff, John M. Landis, was appointed by this court to represent Dale Craig in connection with Craig's claims for postconviction relief following his conviction for first-degree murder and a sentence of death.[1] In connection with his representation of Craig, plaintiff served upon defendant, Doug Moreau, the District Attorney for East Baton Rouge Parish, a written request, seeking to inspect and copy the public records in his custody and control, regarding the investigation, arrest, and prosecution of Dale Craig and his co-defendants, pursuant to the Public Records Act, La. R.S. 44:1, et seq. In response to plaintiff's request, defendant made available for inspection and copying materials represented to be all items responsive to the request. Defendant withheld audiotapes containing statements of witnesses interviewed by the district attorney's office during the investigation of the case, contending that the recordings were not discoverable as they were privileged under the attorney work product rule.
Plaintiff filed a petition for writ of mandamus against defendant in his capacity as district attorney, seeking to compel defendant to produce the materials withheld from the response to plaintiff's request for discovery. Plaintiff contends that defendant improperly withheld certain materials, including tape recorded and written statements of potential and actual trial witnesses, and/or notes from interviews with such witnesses, on the grounds that these materials are protected under the attorney work product privilege.
A formal hearing on the mandamus petition was never held. However, after three status conferences, the trial court ruled that the audio taped witness statements were not subject to disclosure under the Public Records doctrine. After performing an in camera inspection of the remainder of the district attorney's files, the trial *694 court ordered Moreau to produce the following items to plaintiff:
1. A March 9, 1993 letter to James LaVigne and Francis Rougeou, his attorney, regarding a proposed plea agreement.
2. Original and follow-up reports provided by the East Baton Rouge Parish Sheriff's Office, Office of State Fire Marshal, and State Police Crime Lab on Dale Dwayne Craig, James Conrad LaVigne, and Zebbie Wayne Berthelot.
3. The Juvenile Court summary dated March 15, 1991, in petition number 64,264 on Dale Dwayne Craig.
The trial court then concluded that all other documents were not discoverable because they "were found to contain mental impressions of the District Attorney."
Plaintiff appealed the trial court's ruling, and in an unpublished opinion, the court of appeal affirmed the trial court's decision. Landis v. Moreau, 99-298 (La.App. 1 Cir. 3/31/00). Plaintiff filed an application for writ of certiorari with this court, and by order dated September 22, 2000, this court granted the writ application. Landis v. Moreau, 00-1157 (La.9/22/00), 767 So.2d 709.

DISCUSSION
Plaintiff contends that the tape recorded statements are not exempt from disclosure as an attorney work product under the Public Records Act, La. R.S. 44:1 et seq., which as a general rule, makes available for inspection and reproduction "any public record" not specifically exempted from the Act's broad scope. See La. R.S. 44:31.
La. Const. art. XII § 3 provides, in pertinent part:
No person shall be denied the right to... examine public documents, except in cases established by law.
La. R.S. 44:1(2) defines "public records" as follows:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of any ordinance, regulation, mandate, or order of any public body..., except as otherwise provided in this Chapter or as otherwise specifically provided by law.
Any person of the age of majority may inspect, copy, or reproduce or obtain a reproduction of any public record. La. R.S. 44:31. The custodian shall present any public record to any person of the age of majority who so requests. La. R.S. 44:32.
This court has determined that the right of access to public records is a fundamental right guaranteed by La. Const. art. XII § 3, and whenever there is any doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right of access. Title Research Corp. v. Rausch, 450 So.2d 933 (La.1984).
In Rausch, this court stated:
The legislature, by the public records statutes, sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public. There was no intent on the part of the legislatures *695 to qualify, in any way, the right of access. [citations omitted]. As with the constitutional provision, the statute should be construed liberally, and any doubt must be resolved in favor of the right of access.
Id. at 937.
The Public Records Act exempts from disclosure of records relating to pending or anticipated criminal litigation, "until such litigation has been finally adjudicated or otherwise settled." La. R.S. 44:3(1) (emphasis added). Hence, the Act only temporarily denies access to the district attorney's files. In Harrison v. Norris, 569 So.2d 585 (La.App. 2 Cir., 1990); writ denied, 571 So.2d 657, the court concluded:
The legislature could have provided either for or against access to the DA record pertaining to finally-adjudicated criminal litigation ... [N]umerous sections of the PR Act that unequivocally and specifically provide against access to particular records that are otherwise public records ... The legislature, our opinion, made a choice for access after final adjudication by the clear language of [La. R.S. 44:3(A)(1)].
Consequently, the audiotapes which plaintiff seeks disclosure of are not specifically exempted under the Act.
Furthermore, in Lemmon v. Connick, 590 So.2d 574 (La.1991), this court held that post-conviction relief is not "criminal litigation" within the meaning of the Public Records Act and ordered the district attorney to "produce records in its possession and not otherwise privileged." Neither party to the instant litigation challenges the holding of Lemmon. However, plaintiff originally requested "all documents and other tangible items concerning the investigation, arrest, and prosecution of Craig [and co-defendants] ..., including, without limitation, any and all records, documents, reports, analysis, notes, memoranda, audio and visual tapes, photographs, and charts." Therefore, it is essential that we review the law surrounding the provision of documents to criminal defendants since our holding in Lemmon.
First, this court has limited the number of documents an inmate can receive costfree as of right. See State ex rel. Simmons v. State, 93-0275 (La.12/16/94), 647 So.2d 1094. Secondly, this court has articulated a rule requiring that an inmate must have already filed an application requiring documentation for its support before he may seek cost-free copies. State ex rel. Bernard v. Criminal District Court, 94-2247 (La.4/28/95), 653 So.2d 1174. This rule prevents the state from having to "underwrite an inmate's efforts to overturn his conviction and sentence by providing him generally with documents `to comb the record for error.'" Id. (citations omitted). Thirdly, we have held that custodians of records must supply inmates with cost estimates for reproduction at their cost of documents without regard to the rule of Bernard. See, e.g., State ex rel. Gray v. State, 97-0447 (La.9/5/97), 699 So.2d 74; Range v. Moreau, 96-1607 (La.9/3/96), 678 So.2d 537. This rule allows an inmate to "comb the record for errors," provided he can pay for the privilege. Additionally, this court has refused to allow wide ranging discovery in post-conviction proceedings, while finding that post-conviction procedures are "unique, hybrid, and have both civil and criminal legal characteristics." State ex rel. Tassin v. Whitley, 602 So.2d 721 (La.1992).
Few courts in other jurisdictions have directly addressed the question presented in Lemmon. Federal law contains no per se rule like that of Lemmon, and, in fact, does not treat habeas petitioners' requests for documents under the Freedom of Information Act ("FOIA") at all. The FOIA broadly requires disclosure of public records, but excepts "records or information *696 compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information... could reasonably be expected to interfere with enforcement proceedings.... 5 U.S.C. § 552(b)(7)(A). Federal jurisprudence has not established a per se rule allowing or forbidding release of law enforcement information for use in habeas corpus proceedings. Instead, in leading cases under the FOIA, courts have held that law enforcement agencies need not disclose information if disclosure could reasonably be expected to interfere with enforcement proceedings that are pending or reasonably anticipated." Mapother v. Department of Justice, 3 F.3d 1533, 1540 (D.C.Cir.1993) (citing N.L.R.B. v. Robbins Tire & Rubber, 437 U.S. 214, 224-25, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978)). The court stated that the purpose of § 552(b)(7)(A) "is `to prevent harm to the Government's case in court'" by preventing litigants from obtaining "`early or greater access' to agency investigatory files than they would otherwise have." Id.
Additionally, pursuant to Rules Governing 28 U.S.C. § 2254 Proceedings, Rule 6; Rules Governing 28 U.S.C. § 2255 Proceedings, Rule 6, a federal judge will grant leave to a habeas petitioner to invoke the discovery machinery of the Federal Rules of Procedure if the judge, in his discretion, finds that the petitioner has shown "good cause." Federal courts have not established a per se bar to discoverability of law enforcement files, but have instead determined, case-by-case, whether petitioners have demonstrated good cause.
Turning our attention to the instant case, pursuant to La. R.S. 44:35(B), the burden is on defendant to prove that the audio taped recordings are exempt from disclosure. Defendant contends that plaintiff is not entitled to inspect and copy the audiotapes in the post-conviction proceedings because he would not have been entitled to obtain these statements at earlier stages of the criminal proceedings pursuant to La.Code Crim. P. articles 716 through 723.
La. R.S. 44:35 provides, in pertinent part:
A. Any person who has been denied the right to inspect or copy a record under the provisions of this Chapter ... may institute proceedings for the issuance of a writ of mandamus....
B. In any suit filed under Subsection A above, the court has jurisdiction to ... issue a writ a mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action. The court may view the documents in controversy in camera before reaching a decision....
A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La.Code Civ. P. art. 3862. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. La. Code Civ. P. art. 3863.
The Code of Criminal Procedure articles cited by defendant all pertain to pretrial discovery in criminal cases. As noted above, the underlying criminal litigation in this case has been finally adjudicated. Furthermore, this is a civil case, brought by a citizen to compel the district attorney to perform his ministerial duty under the Public Records Act. Accordingly, we conclude that defendant's argument that this case should be decided under the Code of Criminal Procedure articles relevant to pretrial discovery is without merit.
Additionally, defendant contends that the recordings are exempt from public disclosure by Section 2 of Acts 1978, No. 686, which provides:
The provisions of this Act shall not apply to any writings, records, or other accounts that reflect the mental impressions, *697 conclusions, opinions, or theories of an attorney or an expert, obtained or prepared in anticipation of litigation or in preparation of a trial.
Conversely, plaintiff argues that the Public Records Act does not contain a specific provision for attorney work product, and the provision cited by defendant is merely a general provision of an amending act and should be read to express a legislative intent that requests under the Act be subjected to the same attorney work product doctrine that is applicable in other civil cases. Plaintiff maintains that Act No. 686 cannot be construed to provide any greater protection than that available under La. Code Civ. P. art. 1424, which provides, in relevant part:
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney,... expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of any attorney or an expert.
This court has held that the attorney work product exception to general discovery refers only to writings and does not include tangible things such as videotapes, films, or photographs. Moak v. Illinois Cent. R. Co., 93-0783 (La.1/14/94), 631 So.2d 401; Wolford v. JoEllen Smith Psych. Hosp., 96-2460 (La.5/20/97), 693 So.2d 1164.
Audiotapes are "tangible things," similar in nature to videotapes, films, and photographs. Thus, we conclude that the work product exception contained in La. Code Civ. P. art. 1424 does not include audiotapes.
1978 La. Acts 686, § 2 excludes "writings, records, or other accounts" reflective of an attorney's or expert's mental impressions, while La.Code Civ. P. art. 1424 excludes only "writings."[2] The purposes of the work-product rule are both to provide an attorney a "zone of privacy" within which he is free to evaluate and prepare his case without scrutiny by his adversary and to assist clients in obtaining complete legal advice. Hodges v. Southern Farm Bureau Casualty Insurance Co., 433 So.2d 125, 131-32 (La.1983). Moreover, the privilege created by the work product doctrine is qualified, not absolute. Id.
In the instant case, it remains unknown whether the audiotapes at issue "reflect the mental impressions, conclusions, opinions, or theories of an attorney or an expert." Thus, whether 1978 La. Acts 686, § 2 applies is irrelevant at this point.
According to defendant, the audiotapes contain interviews of witnesses the prosecution intended to call at Craig's trial. He asserts that the prosecutor and his investigator, not an expert, met with the witnesses and questioned them regarding the state's theory of the case.
In Ogea v. Jacobs, 344 So.2d 953 (La.1977), this court held that the written opinion of an employee who was neither an attorney nor an expert was not protected from discovery under the "mental impression" provision of La.Code Civ. P. art. 1424. Therefore, we conclude that if the audiotapes contain any mental impressions, conclusions, opinions, or theories of the investigator, then those impressions *698 are not immune from disclosure pursuant to 1978 La. Acts 686, § 2 or La.Code Civ. P. art. 1424.
Additionally, we are not persuaded that the eighteen audiotapes at issue contain only exchanges between the witnesses and the prosecutor regarding the state's theory of the case. The trial court could have viewed the audiotapes, in camera, pursuant to La. R.S. 44:35(B). However, in its written reasons for judgment, the trial court stated:
[After] considering the original petition for Writ of Mandamus, memoranda, and discussions in chambers, the Court found that the audiotaped witness statements were not subject to the Public Records Doctrine. Further, after an in camera review of the District Attorney's files, the Court found the following items to be subject to production under the Public Records Doctrine: [the letter regarding the plea agreement, the police files, and Craig's juvenile court summary].
Based upon the trial court's reasons, we cannot conclude that the trial court conducted an in camera review of the audiotapes. The trial court merely made a finding that the tapes "were not subject to the Public Records Doctrine" and rejected the tapes in toto.
Accordingly, we reverse the lower courts' rulings that the audiotapes are not discoverable in their entirety. We order that the audiotapes be transcribed by an official court reporter while remaining under seal, and we remand this matter to the trial court for an in camera inspection of the transcriptions of the tapes to determine whether any portions of the tape recorded statements are discoverable. Additionally, we hold that any mental impressions, conclusions, opinions, or theories of the investigator cannot be immune from discovery under the attorney work product privilege.
REVERSED AND REMANDED
TRAYLOR, J., dissents.
VICTORY, J., concurs in the result.
NOTES
[1] The criminal litigation in which Craig was convicted is final and unappealable. This court affirmed the conviction and sentence, (See State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865), and the United States Supreme Court denied certiorari. 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997).
[2] Although La. Acts 686, § 2 has never been included in the amended Act as set out in the Revised Statutes, at least one court has found that the work-product privilege exception set out in Act No. 686 excludes a district attorney's "mental impressions, conclusions, opinions, or theories" from disclosure. Trenticosta v. Mamoulides, 93-621 (La.App. 5 Cir. 2/23/94), 633 So.2d 786; writ denied, 94-1295 (La.9/2/94), 643 So.2d 147.